UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB, et al., | |
| Plaintiffs, | NO. 1:10-cv-01513-RBW |
| v. | |
| KEN SALAZAR, et al., | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS'**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants have cross-moved for summary judgment on two grounds, demonstrating that

Plaintiffs have failed to establish their standing under Article III of the United States Constitution

and have failed to carry their high burden under the Administrative Procedure Act ("APA") of

showing that the decision by the National Park Service ("NPS") to remove the Blair Mountain

Battlefield from the National Register of Historic Places was arbitrary and capricious.  *See* Defs.'

Cross-Mot. for Summ. J. ("Defs.' Br.") (Doc. No. 28).  As discussed below, Plaintiffs fail to

rebut these arguments in their Reply Brief  ("Pls.' Reply Br.")  (Doc. No. 30).  Consequently,

Defendants are entitled to summary judgment on all counts.

**ARGUMENT**

**I.    Plaintiffs have failed to demonstrate a concrete and particularized harm sufficient
        to establish their standing.**

A litigant must have standing to challenge the action sought to be adjudicated in a

lawsuit.  At an irreducible minimum, to satisfy the "case or controversy" limitation on judicial

power established by Article III of the U.S. Constitution, Plaintiffs must demonstrate three

essential elements: (i) an "injury in fact" that is "concrete and particularized," (ii) "fairly

traceable" to Defendants' action, and (iii) can be redressed by a favorable judicial decision.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1149 (2009); *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560-61 (1992); *Allen v. Wright*, 468 U.S. 737, 782 (1984); *Valley*

*Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472

(1982).  At the pleading stage, a plaintiff must plead facts that support standing; at summary

judgment, a plaintiff must submit evidence of standing; at trial, a plaintiff must prove standing.

*Lujan*, 504 U.S. at 561.

If the plaintiff is "not himself the object of the government action or inaction he

challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish."

*Defs. of Wildlife*, 504 U.S. at 562 (internal quotation omitted).  The standing doctrine "requires

federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the

outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Summers*,

129 S.Ct. at 1149 (internal quotations omitted) (emphasis in original).

Where the plaintiff is an advocacy organization, it can assert the standing of its members.

*Id*.  "While generalized harm to the forest or the environment will not alone support standing, if

that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that

will suffice." *Id*. (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–36 (1972)).  Thus, where a

member of one of the *Summers* plaintiff organizations alleged that he "had repeatedly visited the

Burnt Ridge site, that he had imminent plans to do so again, and that his interests in viewing the

flora and fauna of the area would be harmed if the Burnt Ridge Project went forward," he had

sufficiently alleged the elements of standing to challenge the Burnt Ridge Project. *Id*. But when

a settlement remedied the impacts to the Burnt Ridge site, the organization's member and the

organization no longer had standing to challenge the underlying Forest Service regulation that

could affect many of the National Forests. *Id*. at 1150. The plaintiff organizations attempted to

cure that defect by identifying a member who had a general interest in National Forests. *Id*. But

that was insufficient because the member could not state a definitive intent to visit any particular

forest that would be affected by the regulations. *Id*. Consequently, the plaintiff organizations

lacked standing. *Id*.

In this case, Defendants' motion for summary judgment demonstrated that Plaintiffs had

failed to establish any of the three elements of standing, including the threshold element of

injury. Defs. Br. at 19–23. Plaintiffs' Reply Brief attempts to cure this deficiency by submitting

new affidavits that establish the existence of mineral interests on Blair Mountain, which they

claim will be developed imminently. Plaintiffs claim "the administrative record as well as the

declarations submitted by Plaintiffs demonstrate that the risk of serious harm *to Blair Mountain*

*Battlefield* as a result of current and planned surface mining operations is both concrete and

immediate." Pls.' Reply Br. at 2 (emphasis added). Specifically, they note that "[t]he significant

adverse effects of surface mining, and particularly mountaintop removal surface mining

activities, are a matter of established public record within the federal government." *Id*. at 4.

But even if, *arguendo*, the de-listing decision makes coal mining on Blair Mountain

incrementally more likely, and that coal mining would "serious[ly] harm Blair Mountain" (*see*

Pls.' Reply Br. at 2), Plaintiffs have still failed to demonstrate standing. As in *Summers*,

Plaintiffs attempt to rely on harms to the *site* rather than injuries to themselves or their members.

They attempt to satisfy the injury requirement by noting that several of the Plaintiff advocacy organizations submitted a petition to the West Virginia Dept. of Environmental Protection seeking to have Blair Mountain designated as "unsuitable for surface coal mining." *Id*. at 3. Plaintiffs also "sent letters to various permitting agencies expressing concerns about the effects of pending permit applications on the Blair Mountain Battlefield." *Id*. at 4.  But this is a *non sequitur*.  These petitions and letters do not demonstrate that Plaintiffs have standing:  They demonstrate that Plaintiffs have an opinion.

Affidavits previously submitted by Plaintiffs state that some of their members have visited the site, may visit it against in the future, and are "very worried that the battle sites at Blair Mountain will be destroyed if the mountain is not listed on the National Register of Historic Places." Decl. of Gordon Simmons ¶¶ 5–6 (Doc. No. 23-7).  But there is no particularized explanation of how mining, if it occurs, will affect any particular portion of the site in a way that will affect those members' enjoyment of the site.  Furthermore, the Blair Mountain site consists of privately owned lands that cannot be accessed without those lands' owners' permission. There is no evidence in the record or affidavits that any representative member of any of the six organizational Plaintiffs  any property interest in Blair Mountain.  None of the organizational members who submitted affidavits in support of Plaintiffs' Motion for Summary Judgment—Regina Hendrix, Harvard Ayers, Julian Martin, Barbara Rasmussen, Gordon Simmons, and Nell Ziehl—appears on the list of owners of property in the Blair Mountain proposed historic district.  *See* List of Owners, AR0464.  Despite the stated intent of some of Plaintiffs' members, there is no evidence that any of them has a legal right or even legal

permission to visit any parcel on Blair Mountain in the future.[1]  Their interest in the site is purely

notional and, even if mining were to occur on Blair Mountain, the injury that they allege they

would suffer is entirely speculative.  Moreover, nothing in the record so much as suggests that

mining is imminent on any portion of Blair Mountain.  Because Plaintiffs cannot demonstrate the

elements of standing, including the threshold element of a concrete and particularized injury,

Defendants are entitled to summary judgment on all counts of Plaintiffs' Complaint.

> **II.     Plaintiffs have failed to carry their high burden to demonstrate that the de-listing decision was arbitrary and capricious.**

In their Complaint and Motion for Summary Judgment, Plaintiffs made three arguments

that the de-listing decision was arbitrary and capricious under the APA:  (1) that NPS erred in

utilizing WVSHPO's recalculated list of owners; (2) that NPS erred in concluding there was

procedural error in the nominating process because a majority of owners had timely objected to

listing; and (3) that NPS erred in denying Plaintiffs' petition for reconsideration of the de-listing

decision.[2]  Defendants, in their Cross-Motion, demonstrated that all three of those arguments fail.

---

[1]Blair Mountain is private property, and protesters were met by police during a recent rally referred to in affidavits submitted by the Plaintiffs.  *See* Decl. of Gordon Simmons (Doc. No. 23-7) ¶ 5; *Acorn Rallies to save Blair Mountain*, http://www.acorncommunity.org/2011/06/acorn-rallies-to-save-blair-mountain/ (last accessed July 25, 2011) (describing the march by protesters conducted between June 5 and June 11, 2011, near Blair Mountain).  By the protesters' own account, when they reached "the historic Blair Mountain battle field, all those who couldn't risk arrest stayed behind," while the other protesters "poured over and around the gate that blocked the road" to the site.  *See also* http://www.acorncommunity.org/wp-content/uploads/2011/06/Blair-Mountain-June-2011-083-800x600.jpg (photo captioned "cops telling us to leave").

[2]Plaintiffs' Reply Brief includes no response to the arguments in Defendants' Cross-Motion made in opposition to this claim.  In light of Plaintiffs' apparent abandonment of the claim. Defendants to continue to rely on those arguments, which demonstrated that the petition for reconsideration did not fit within the parameters for reconsideration established by NPS's regulations.  *See* Defs.' Br. at 31–32.

*See* Defs.' Br. at 23–32.  As discussed below, Plaintiffs' Reply Brief fails to demonstrate that

they have carried their burden under the APA, and Defendants are consequently entitled to

summary judgment on all counts.

      **A.**      **NPS did not err in using the recalculated ownership list.**

      In their Opposition Brief, Plaintiffs maintain that NPS erred by not relying on a October

24, 2008, list of property owners originally submitted by the West Virginia State Historic

Preservation Officer ("WVSHPO").  *See* Pls.' Reply Br. at 7–11.  Plaintiffs prefer this list to the

May 21, 2009, list on which NPS ultimately based its calculation.  Plaintiffs state, accurately, that

"the Keeper was obligated to make an independent determination of whether the . . .

recalculation of owners and objections was compliant with the NPS's own regulations" and that

NPS "is not permitted to disregard noncompliance with its regulations."  *Id*. at 8, 10.  Plaintiffs

go so far as to compare NPS's decision with the 2000 presidential election controversy, where

the Supreme Court eventually found that Florida's plan to recount votes without imposing

adequate standards violated the United States Constitution.  *Id*. at 10 (citing *Bush v. Gore*, 531

U.S. 98 (2000)).  But Plaintiffs' argument—that NPS's adoption of the recalculated list should

not be afforded deference because it allegedly violates NPS's regulations—is utterly without

merit because Plaintiffs have misinterpreted those regulations, with which NPS's decision was

entirely consistent.

      Plaintiffs claim the adoption of the revised list violated two subsections of the NPS

regulations:  36 C.F.R. § 60.6(c) and (g).  *See* Pls.' Reply Br. at 8, n. 2.  Section 60.6(c) directs

the SHPO to prepare a list of owners 90 days prior to providing the public with notice of the

site's nomination.  Both Plaintiffs and Defendants have referred to this list as the "baseline list."

The baseline list is to be based on "either official land recordation records or tax records,

whichever is more appropriate." 36 C.F.R. § 60.6(c). However, the Keeper may grant approval

to use an alternative method to develop the list if appropriate. *Id*. No regulatory provision

specifies that the 90-day baseline list cannot later be modified to correct errors.

Plaintiffs view this list as inviolable, claiming it can be modified only if a party submits

"a written notarized statement that the party is the sole or partial owner of a nominated private

property." Pls.' Reply Br. at 7–8 (quoting 36 C.F.R. § 60.6(g)). Plaintiffs claim that regulation

contains a "requirement that corrections to the list of owners be submitted only be 'an owner'

who 'certifies in a written notarized statement that the party is the sole or partial owner of a

nominated private property." *Id*. at 12 (quoting 36 C.F.R. § 60.6(g)).

Because some of the land owners present on the recalculated list (but not present on the

earlier 2008 list) did not submit affidavits objecting to listing, Plaintiffs claim their inclusion in

the list violated this regulation. But Plaintiffs take § 60.6(g)'s requirement of a written notarized

statement out of context. The written notarized statement requirement applies to "any owner or

owners of a private property *who wish to object*." 36 C.F.R. § 60.6(g) (emphasis added).

Because the § 60.6(g) affidavit requirement is limited, by its own terms, to owners who wish to

object, it does not apply to this situation: Where NPS discovers (in this case through

WVSHPO's own admission) that the 90-day baseline list did not accurately reflect the actual

owners of property in the proposed historic district.

Plaintiffs' interpretation of § 60.6(g), articulated in footnote 5 of Plaintiffs' Reply Brief at

p. 12, as the sole mechanism to modify the ownership list would lead to truly absurd results.

Because § 60.6(g) by its terms only applies to "any owner or owners of a private property who

wish to object," if that subsection truly is the only mechanism to modify the ownership list then there is absolutely no way for true owners who *do not* object to be added to the ownership list if they were erroneously omitted from it.  Nothing in the plain language of the regulations suggests this is the case.  Section 60.6(g) is a mechanism for expressing objection, not for correcting errors and omissions in the ownership list.

As Plaintiffs note, "it was the Keeper's independent responsibility to determine whether a majority of owners objected to the National Register listing."  Pls.' Reply Br. at 8.  When WVSHPO submitted a new ownership list containing new property owners discovered through the land recordation records specified in § 60.6(c), NPS properly accepted that newer list.  The only argument Plaintiffs make in opposition to the recalculated list, aside from their faulty interpretation of NPS regulations, is to point out that the list was partially based on corrections submitted by a law firm representing property owners in the proposed historic district.  Pls.' Reply Br. at 12 (citing AR1231–35).

Plaintiffs do not argue that the recalculated list was actually less accurate than the earlier baseline list.  Indeed, by focusing only on the earlier baseline list and the May 2009 recalculated list, Plaintiffs drastically oversimplify the situation:  As of March 30, 2009, WVSHPO had analyzed the objection count under "*four different counts*, based on different methodologies." March 30, 2009, Letter from WVSHPO to NPS, AR0323–24.  NPS asked WVSHPO to choose one of those lists as definitive, which resulted in the May, 2009, recalculated list.  WVSHPO characterized this as the "most logical choice" of the various lists.  AR0323.  For NPS to ignore the recalculated list in favor of the baseline list would have been to rely on an outdated factual record with no regulatory requirement to do so, which would have been an error.  NPS was not

arbitrary and capricious in accepting the recalculated list in full compliance with the limited requirements of its regulations.

**B.     NPS properly determined that a majority of owners timely objected to listing.**

Plaintiffs' opening brief attempted to undermine NPS's determination that a majority of owners had objected to listing, by attempting to find faults with specific objections.  As Defendants argued in their Cross-Motion, Plaintiffs fail in their attempts to flyspeck NPS's determination that a majority of owners objected to listing the site.  *See* Defs.' Br. at 23–31.  In their Reply Brief, Plaintiffs challenge the validity of the objections submitted by Nellie Craddock, Dollie Jeffrey, August Philips, Eula Ball, and Eula Blankenship.  As discussed below, those challenges do not demonstrate that NPS's decision was arbitrary and capricious.

As to August Philips, Eula Ball, and Eula Blankenship, Plaintiffs claim the only basis for these landowners' inclusion on the list of owners, and for counting their objections, is "third-party hearsay."  Pls.' Reply at 24–25.  That claim is easily disproved by a careful examination of the administrative record.  There are objections in the administrative record submitted personally by August Phillips (AR0054), Eula Ball (AR0055), and Eula Blankenship (AR0060), each of whom personally affirmed that they were landowners and objected to ownership.  With no contrary evidence in the record, NPS rightfully relied on these affidavits to conclude that Mr. Philips, Ms. Ball, and Ms. Blankenship were property owners who objected to the listing.  Plaintiffs' extensive arguments in their Reply Brief, at pages 23–25, are based on the false premise that these three owners did not actually object in their own right.  Because that is not the case, Plaintiffs' arguments fail.

As to Ms. Craddock, Plaintiffs (including Friends of Blair Mountain) make an extraordinary argument:  They claim NPS erred by relying on title information submitted by Friends of Blair Mountain to conclude that Nellie Craddock was herself a landowner who had the right to object on her own behalf.  Plaintiffs take an all-or-nothing approach, arguing that "the Friends of Blair Mountain title research demonstrated that the list of owners . . . was inaccurate in numerous respects," and NPS thus should have adopted all of their conclusions.[3]  This argument ignores that discretion under APA review that is invested in the National Park Service.  As the courts have recognized, the more complex, technical, and difficult a fact is to determine—in this case the intricacies of West Virginia property law—the more likely a court is to defer to agency fact-finding. *See Nat'l Wildlife Fed. v. EPA*, 286 F.3d 554, 563 (D.C. Cir. 2002) ("While EPA must take seriously its statutory duty to reconsider cost, courts of review should be mindful of the many problems inherent in an undertaking of this nature and uphold a reasonable effort made by the Agency.").  If anything, the fact that NPS chose to recognize Ms. Craddock's objection without adopting wholesale the title research conducted by Friends of Blair Mountain indicates that NPS carefully and critically scrutinized that research and utilized the portions of it that were, in NPS's judgment, reasonable.  In short, it indicates that NPS's action was the opposite of arbitrary and capricious.

---

[3]Plaintiffs also argue that NPS erred by relying in part on information submitted after the initial listing decision, claiming to do so will result in "no finality whatsoever."  But there is an inherent finality to NPS's decision:  Either a majority of landowners objected to listing by the deadline imposed by the regulations, or they did not.  NPS's de-listing decision was based on its conclusion that WVSHPO had erred in originally reporting that no majority had objected, which error was the result of "a clerical error of the SHPO." Defs.' Br. at 12.  Because this was a single easily-identifiable and easily-remedied error, it was not arbitrary and capricious for NPS to correct it by correcting the erroneous listing decision.

As to Ms. Jeffrey, Plaintiffs attack her objection by focusing on unofficial and non-binding guidance NPS provided to the WVSHPO in response to a question submitted to NPS in the hypothetical.  NPS stated that "[i]t is reasonable to expect an owner to demonstrate by address, parcel, or other acceptable locational information where this property is located for their objection to be counted."  AR00789.  NPS also noted that the putative property owner, who did not exist on the list of property owners compiled from title or tax records, would have to demonstrate "that she is a property owner whose name did not appear on the list."  AR00787.

The NPS regulations impose a clear standard for establishing a landowner's objection: "Upon notification, any owner or owners of a private property who wish to object shall submit to the State Historic Preservation Officer a notarized statement certifying that the party is the sole or partial owner of the private property, as appropriate, and objects to the listing." 36 C.F.R. § 60.6(g).  The record contains a written objection from Dollie Jeffrey that does exactly that. (AR0049).  The additional requirement of "address, parcel, or other acceptable locational information" that Plaintiffs wish to impose is not consistent with the regulations' plain language, which speaks for itself.  NPS properly counted Ms. Jeffrey's written objection.

In short, Plaintiffs have failed to establish that NPS was arbitrary and capricious in determining that a majority of landowners objected to the listing of Blair Mountain Battlefield. Because Plaintiffs have failed to carry their high burden under the APA, Defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Cross-Motion for Summary Judgment on all counts.

DATED this 25th day of July, 2011.

IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice


/s/  Ty Bair
TY BAIR
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Phone: (202) 307-3316
Fax:    (202) 305-0506
E-mail: tyler.bair@usdoj.gov

Overnight delivery:
PHB Mail Room 2121
601 D Street, N.W.
Washington D.C., 20004

Attorney for Defendants