UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIERRA CLUB, <u>et al.</u>,  )<br>  )<br>    Plaintiffs,  )<br>  )<br>  v.  )<br>  )<br>KEN SALAZAR, <u>et al.</u>,  )<br>  )<br>    Defendants.  )<br>  ) | Civil Action No. 10-1513 (RBW) |

**ORDER**

  The Sierra Club, the Ohio Valley Environmental Coalition, the Friends of Blair Mountain, Inc., the West Virginia Labor History Association, the National Trust for History Preservation in the United States, and the West Virginia Highlands Conservancy, the plaintiffs in this civil case, filed an amended complaint on December 21, 2010, against the following defendants: the Department of the Interior (the "DOI"), Ken Salazar, in his official capacity as the Secretary of the DOI, Jon Jarvis, in his official capacity as the Director of the National Park Service (the "Park Service"), and Carol Shull, in her official capacity as the Keeper of the National Register. See First Amended Complaint for Declaratory and Injunctive Relief ("First Am. Compl."). The plaintiffs challenge "the lawfulness of . . . removing the Blair Mountain Battlefield . . . from listing in the National Register of Historic Places ('National Register'),"[1] id. ¶ 1, specifically alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §

---

[1] "Blair Mountain, in Logan County, West Virginia, is the site of the Battle of Blair Mountain, which was fought . . . between August 30 and September 4, 1921, and was the largest battle on American soil since the Civil War. The battle was . . . marked by a level of violence unparalleled in U.S. labor history that fundamentally affected the direction of American labor history." First Am. Compl. ¶ 28.

706(2)(A) (2006), the National Historic Preservation Act, 16 U.S.C. § 470a(a)(6) (2006), and the Code of Federal Regulations ("C.F.R.") Part 60, 36 C.F.R. § 60, First. Am. Compl. ¶¶ 69-72.

The defendants have filed a motion under 28 U.S.C. § 1404(a) asking the Court to transfer this case to the United States District Court for the Southern District of West Virginia, arguing that "[t]he public and private factors . . . weigh heavily in favor of transfer." Defendants' Motion to Transfer and Memorandum in Support of Motion to Transfer ("Defs.' Mem.") at 1. After carefully considering all of the relevant submissions by the parties,[2] the Court concludes for the reasons below that the motion should be denied.

Section 1404(a) provides in relevant part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a) (2006). "Section 1404(a) vests discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration[s] of convenience and fairness." Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (internal quotation marks omitted). "As the moving party, [the] defendants bear the burden of establishing that the transfer of this action to another federal district is proper." Valley Cmty. Pres. Com'n v. Mineta, 231 F. Supp. 2d 23, 44 (D.D.C. 2002).

In considering the defendants' motion to transfer this case to the Southern District of West Virginia, the preliminary question the Court must answer is whether this action originally could have been filed in that district. See Trout Unlimited, 944 F. Supp. at 16; accord Valley Cmty., 231 F. Supp. 2d at 44. Under 28 U.S.C. § 1391(e) (2006), when an officer, employee, or any agency of the United States is the defendant in a civil action, venue is proper "in any judicial

---

[2] In addition to considering the Defendants' Motion to Transfer, the Court considered the following submissions: the First Amended Complaint for Declaratory and Injunctive Relief, the Plaintiffs' Opposition to Defendants' Motion to Transfer, and the Reply in Support of Defendants' Motion to Transfer.

district in which (1) a defendant in the action resides, [or] (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(2).[3] As to venue, the plaintiffs concede, and the Court agrees, that venue would have been proper in the Southern District of West Virginia because the Blair Mountain Battlefield is located within the boundaries of that district. See Plaintiffs' Opposition to Defendants' Motion to Transfer ("Pls.' Opp'n") at 6. The defendants, therefore, have satisfied the threshold requirement for transferring cases under Section 1404(a).

Because venue would be proper in the Southern District of West Virginia, the Court "must [now] evaluate the convenience of the parties, the convenience of the witnesses, and the interests of justice" in resolving the defendants' transfer request. Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). In other words, the Court must balance "the private interests of the parties and the public interests of the court." Valley Cmty., 231 F. Supp. 2d at 44. The private interests that may be considered include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

Id. at 44-45. The public interest considerations include: "(1) the transferee[ court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Id. at 45 (internal quotation marks omitted).

Turning to the private interest considerations, the Court "must afford substantial deference to the plaintiffs' choice of forum." Greater Yellowstone Coal., 180 F. Supp. 2d at 128;

---

[3] Venue is also proper in a judicial district where "the plaintiff resides if no real property is involved in the action," 28 U.S.C. § 1391(e)(3), but this provision does not apply in this case because real property is at issue.

accord Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 24 (D.D.C. 2002).  However, this deference is mitigated if the choice of venue "has no meaningful ties to the controversy and no particular interest in the parties or subject matter."  Greater Yellowstone Coal., 180 F. Supp. 2d at 128 (internal quotation marks omitted).  As support for their position, the defendants argue that the connection between the plaintiffs, the controversy, and the District of Columbia is nonexistent.  Defs.' Mem. at 6-8.  On the other hand, the plaintiffs argue that transferring the case would be inappropriate because "a substantial part of the events or omissions giving rise to the claim" took place in the District of Columbia.  Pls.' Opp'n at 6.

The parties' disagreement about the correct forum for the litigation of this case necessarily requires the Court to evaluate the other private interests to resolve the defendants' motion.  Accordingly, the Court will next evaluate where the claim arose.  "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose."  Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009); see also Akiachak Native Cmty. v. Dep't of Interior, 502 F. Supp. 2d 64, 68 (D.D.C. 2007) (finding that the claim arose in the District of Columbia, where the DOI engaged in its decisionmaking process, even though the challenged decision had a local impact in Alaska).  Here, the plaintiffs are challenging the removal of the Blair Mountain Battlefield from the National Register, a decision that was initiated and decided exclusively in the District of Columbia.  First Am. Compl. ¶ 64.  Therefore, the claim arose in the District of Columbia, and this factor weighs in favor of denying the motion to transfer.

The remainder of the private interest factors are either irrelevant or also weigh in favor of denying the motion to transfer.  In evaluating the convenience of the witnesses, the Court agrees with the plaintiffs that this factor "is not a relevant issue in [a] case[] such as this one, in which

4

judicial review is based on the agency's administrative record." Pls.' Opp'n at 13; see Greater Yellowstone Coal., 180 F. Supp. 2d at 128 n.3 (noting that the convenience of witnesses was irrelevant because the case would "in all likelihood be decided on motions for summary judgment and . . . not require a trial"). As to the convenience of the parties, this factor also weighs against transferring this case because the plaintiffs desire to litigate the case here, and all of the named defendants and their attorneys are located in the District of Columbia. Pls.' Opp'n at 12. Finally, the sources of proof in this case (those contained in the administrative record) are located in the District of Columbia, leading this Court to conclude that this factor also weighs in favor of denying the transfer. See id. at 14 (noting that "the documents comprising the administrative record are presently located in the District of Columbia"). In sum, the Court finds that the private interest considerations weigh heavily in favor of denying the defendants' motion to transfer.

Next, the Court must evaluate the public interest considerations. The most important of these considerations in this case - the local interest in deciding local controversies at home - requires the Court to "consider a number of factors, including where the challenged decision was made, whether the decision directly affected the citizens of the transferee state, the location of the controversy, . . . whether the controversy has some national significance, and whether there was personal involvement by a [District of Columbia based federal] official." Nat'l Wildlife Found. v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006). Here, the controversy is local in nature because the Blair Mountain Battlefield is located in West Virginia, First Am. Compl. ¶ 28; local state officials conducted the initial research to assess the suitability of the site as a national historic landmark, id. ¶¶ 31-60; and local residents in West Virginia objected to listing the Battlefield in the National Register, id. ¶¶ 22-23. But while the outcome in this case will have a

substantial impact on West Virginia citizens who live or own property in the vicinity of the site, which in isolation could weigh in favor of granting the defendants' transfer request, the Court's decision will have significance outside of West Virginia as well.  For instance, the agency decision under review was made by federal officials in the District of Columbia, id. ¶ 2, and thus the Court's decision in this case will have an impact on the DOI.  In addition, the Court cannot ignore the national significance of the Blair Mountain Battlefield's designation as an historic location.  See id. ¶ 31 (noting that "the [Park Service] asked the West Virginia State Historic Preservation Office . . . to assess the Battle of Blair Mountain Site for possible suitability as a National Historic Landmark due to its exceptional significance to the nation as a whole").  These considerations elevate the case from one involving purely local interests to one also involving national interests and the federal decision-making process, and as a consequence, weigh against granting the transfer request.  See Greater Yellowstone, 180 F.Supp.2d at 129 (noting that where a case has "some national significance" and lacks issues requiring State law expertise, public interest considerations do not weigh in favor of transfer).

As to the remaining public interest considerations, the Court finds that these two factors have no bearing on the merits of the defendants' motion.  First, "[j]udges in both districts are presumed to possess equal familiarity with the federal laws governing this dispute and certainly possess equal competence in adjudicating those laws."  Akiachak Native Cmty., 502 F. Supp. 2d at 68.  Second, as the defendants concede, the relative congestion of the dockets between the District of Columbia and the Southern District of West Virginia is not an issue, as "both . . . [courts] . . . have similar median time intervals for the disposition of civil cases."  Defs.' Mem. at 9.  Considering all of the public interest factors together, the Court concludes that these factors weigh marginally toward denying the defendants' motion.

For all of the reasons discussed above, it is evident to the Court that the defendants' motion to transfer this case to the Southern District of West Virginia must be denied. Although it is true that local residents in West Virginia will be affected to the greatest degree by the outcome of this litigation, the remaining considerations are either neutral or weigh in favor of denying the transfer request. In particular, the Court deems critical that the focus of the plaintiffs' lawsuit concerns the removal of the Blair Mountain Battlefield from the National Register, a decision with national implications that was made by federal officials in the District of Columbia. The Court finds that this factor, especially when viewed together with the other public and private considerations, counsels against transferring this case to the Southern District of West Virginia.

Accordingly, it is

**ORDERED** that the defendants' transfer motion is **DENIED**.

**SO ORDERED** this 4th day of August, 2011.

                                                                     _____
                                                                      REGGIE B. WALTON
                                                                      United States District Judge