## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

SIERRA CLUB, *et al.*                         )
                                              ) No. 10-1513-RBW
        Plaintiffs,                      )
                                              )
          v.                              )
                                              )
KEN SALAZAR, *et al.,*                        )
                                              )
        Defendants.                      )
_____)

### PLAINTIFFS' OPPOSITION TO THE MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF FILED BY THE WEST VIRGINIA COAL ASSOCIATION

Plaintiffs Sierra Club, Ohio Valley Environmental Coalition, Friends of Blair Mountain, Inc., West Virginia Labor History Association, National Trust for Historic Preservation in the United States, and the West Virginia Highlands Conservancy ("Plaintiffs") hereby oppose the untimely motion for leave to file a brief as *amicus curiae* in support of Defendants' brief in opposition to summary judgment and cross motion for summary judgment, filed by the West Virginia Coal Association ("Coal Association" or "WVCA") on July 25, 2011.

### Background

The underlying action was filed by Plaintiffs almost a year ago, on September 9, 2010. Since the filing of the lawsuit, Defendant National Park Service ("NPS") has filed an administrative record and the parties have fully briefed cross motions for summary judgment.

The Coal Association's motion to file an *amicus* brief was filed on July 25, 2011, which was the date on which the NPS filed its summary judgment reply brief. The Coal Association's *amicus* brief raises two issues, neither of which was raised by the NPS: (1) "whether Plaintiffs, as trespassers on WVCA member's privately owned land, have standing," and whether "this case

has effectively become moot, as a result of subsequent efforts by the Plaintiffs before the West Virginia State Historic Preservation Office."  WVCA Mot. at 4.

The NPS' summary judgment reply completed the parties' summary judgment briefing. As a result, if the Coal Association's motion were granted, Plaintiffs would have no further opportunity as a matter of right to respond to the Coal Association's *amicus* brief.

<u>Discussion</u>

As the Coal Association acknowledges, this Court has held that a motion for leave to file an *amicus* brief should only be granted if it is both "timely and useful."  *Ellsworth Assoc., Inc. v. U.S.*, 917 F. Supp. 841, 846 (D.D.C. 1996).  This Court should deny the Coal Association's motion for leave to file an *amicus curiae* brief because the motion is untimely and because the unsubstantiated and selective factual assertions and unsupported legal arguments offered by the Coal Association are not useful to the Court.

I.       <u>The Coal Association's Motion is Untimely and Would Be Prejudicial To Plaintiffs</u>.

While the Federal Rules of Civil Procedure are silent on the timing of *amicus* briefs, as the Coal Association notes, this Court has referred to the Federal Rules of Appellate Procedure for guidance governing the filing of *amicus* briefs.  *Jin v. Ministry of State* Security, 557 F. Supp. 2d 131, 137 (D.D.C. 2008).  Fed. R. App. P. 29 provides that an *amicus* brief filed in support of a party must be filed within 7 days of that party's principal brief, as follows:

> An amicus curiae *must* file its brief, accompanied by a motion for filing when necessary, no later than 7 days after the *principal* brief of the party being supported is filed. . . . A court may grant leave for later filing, specifying the time within which an opposing party may answer.

Fed. R. App. P. 29(e) (emphasis added).

Here, the Coal Association makes clear that it is seeking to file its *amicus* brief in support of the principal brief of the Defendant NPS – the NPS's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment.  WVCA Mot. at 1 (Pacer Document # 35).  That brief was filed by the NPS on May 23, 2011.  Pacer Document # 28.  The Coal Association's motion, however, was filed on July 25, 2011, more than 60 days after the NPS's principal brief.  Therefore, the Coal Association's motion is more than 53 days late.

The extreme lateness of the Coal Association's filing requires that the motion be denied. Plaintiffs filed their last reply brief to the NPS's cross-motion for summary judgment on July 27, 2011.  Pacer Document # 30.  The summary judgment briefing is now complete, and Plaintiffs would have no opportunity to respond to the Coal Association's additional arguments if the Coal Association were permitted to file its *amicus* brief.   It is for precisely this reason that Fed. R. App. P. 29(e) requires that the *amicus* motion and brief be filed "no later than 7 days after the *principal* brief of the party being supported is filed."  Fed. R. App. P. 29(e) (emphasis added).

The Coal Association offers no credible excuse for its tardiness.  The Coal Association does not claim that it was unaware of this case, which has been pending for almost a full year and has been widely reported in the press.  *See, e.g.,*  http://wvgazette.com/News/201101011262. Nor is this motion being filed by a disadvantaged party that lacks adequate legal representation and therefore might be unaware of the normal rules of litigation.  Mining companies represented by the same legal counsel representing the Coal Association have been actively involved in the administrative process.  *See* Administrative Record ("A.R.") 236, 275, 285, 294, 298, 312, 337, 339-42, 358-98, 436, 465-85, 508-16, 1221.

The sole rationale offered by the Coal Association is that, while "[o]riginally, the WVCA saw this case as an isolated historical preservation case," after Plaintiffs filed a Lands Unsuitable

for Mining petition with the West Virginia Department of Environmental Protection ("WVDEP"), "WVCA and its members have come to realize that the Plaintiffs are now attempting to use historical preservation law as part of a multi-pronged attack on West Virginia coal interests and the WVCA's members." WVCA Mot. at 2. This belated assessment of Plaintiffs' motives, in addition to being wrong, does not excuse the tardiness of the Coal Association's motion.

As the "standing" declarations submitted in support of Plaintiffs' summary judgment motion make clear, Plaintiffs sought to reinstate the listing of Blair Mountain Battlefield in the National Register of Historic Places in order to protect the site from the efforts by the mining companies to conduct mining operations that would destroy this extraordinarily important historic site. *See, e.g.,* PACER Document # 23-5. The Coal Association knew or should have known that National Register listing would secure greater protections for this site under federal and West Virginia law. 30 U.S.C. § 1272(e)(3); 38 WV Code St. R. § 2-3.17.c.; *see also* WV Code § 22-3-22(d)(2). Indeed, this is the reason why mining interests, represented by the same law firm that is representing the Coal Association in this matter – Jackson Kelley – so vigorously opposed the National Register listing of the site. Thus, the Association's suggestion that it was unaware of the effect of National Register listing until Plaintiffs filed their Lands Unsuitable for Mining Petition is completely disingenuous.

Further, the Coal Association's concern over Plaintiffs' filing of the Lands Unsuitable for Mining Petition with the WVDEP provides no justification for the Association's belated participation in this case in federal court against the NPS. The two actions are completely independent. The Lands Unsuitable for Mining Petition was premised in part on the National Register *eligibility* of Blair Mountain Battlefield, was submitted pursuant to the federal Surface

4

Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1272(c), and the West Virginia

Surface Coal Mining and Reclamation Act (WV-SCMRA), WV Code § 23-3-22(b) and WV

Code St. R. § 38-2-3.17.c. and § 38-2-19.7.b.2.   By contrast, the instant action involves only the

National Historic Preservation Act ("NHPA"), and focuses solely on the National Register *listing*

of the site; its eligibility for the National Register is not in dispute.  A decision in the West

Virginia matter would not affect the issues before this Court and vice versa.

      Since the Coal Association admits that its primary concern is the Lands Unsuitable for

Mining petition, its *amicus* views should more appropriately be directed to the West Virginia

decision-makers in that proceeding, and are irrelevant to this proceeding.  Indeed, the Coal

Association elsewhere in its motion concedes that it will not even be harmed by the relief

requested in this proceeding by Plaintiffs, since it believes that "pre-existing surface coal mining

permits, issued to WVCA members with land within the Blair Mountain nomination area

proposed boundary, legally and effectively prevent the Plaintiffs' alleged Article III injuries from

being redressable by this Court," WVCA Mot. at 4.[1]  Accordingly, there is no excuse for the

Coal Association's untimely filing.

      Granting the motion would prejudice the Plaintiffs, even assuming this Court provides

Plaintiffs with an opportunity to answer, as suggested by Fed. R. App. P. 29(e).  This sur-reply

opportunity, while necessary to allow Plaintiffs an opportunity to respond to the *amicus* brief

---

[1] Of course, if this characterization is correct, then the Coal Association plainly does not have any interest that can be affected by this action that justifies its *amicus* participation, notwithstanding its inconsistent assertion that "the de-listing decision of the Keeper, will directly affect the WVCA and its members in this case." WVCA Mot. at 2. The Coal Association cannot have it both ways: if the outcome of this action would directly affect the interests of WVCA's members by frustrating the issuance of mining permits, then Plaintiffs have standing to bring this action, since the relief sought would plainly redress the injury to Plaintiffs' interests in preserving and protecting the Blair Mountain Battlefield.

given its untimeliness, will result in further delays in the resolution of this case.  This is

undoubtedly part of the Coal Association's strategy, which is to delay the resolution of this case

so that the Coal Association's members are able to continue to obtain mining permits that could

harm or destroy important features of the Blair Mountain Battlefield, without the legal

protections afforded to National Register-listed properties.  Because the extreme lateness of the

Coal Association's motion is prejudicial to Plaintiffs, the motion should be denied.

       B.                The Coal Association's *Amicus* Brief Does Not Provide Unique
                          Information or Helpful Arguments.

The *amicus* motion should also be denied because a review of the arguments advanced in

the *amicus* brief indicates that it will not be useful to the Court. This Court has articulated the

following circumstances under which an *amicus* brief will be viewed as "useful":

> An *amicus* brief should normally be allowed when a party is not represented competently
> or is not represented at all, when the *amicus* has an interest in some other case that may
> be affected by the decision in the present case (though not enough affected to entitle the
> *amicus* to intervene and become a party in the present case), or when the *amicus* has
> unique information or perspective that can help the court beyond the help that the lawyers
> for the parties are able to provide. Otherwise, leave to file an *amicus curiae* brief should
> be denied.

*Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (quoting *Ryan v.*

*Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1064 (7th Cir.1997)).

Here, the Coal Association suggests that it should be permitted to file an *amicus* brief

because it "has unique information or perspective that will be helpful to the Court in resolving

the issue of whether Plaintiffs, as trespassers on WVCA member's privately owned land, have

standing."  WVCA Mot. at 4.  WVCA also claims that "it can be helpful to this Court by

explaining how this case has effectively become moot, as a result of subsequent efforts by the

Plaintiffs before the West Virginia State Historic Preservation Office."  *Id.*

6

However, a superficial review of the Coal Association's proposed *amicus* brief reveals that the Coal Association fails to supply any support for the predicate factual allegation underlying its standing argument that Plaintiffs' members are "trespassers on WVCA member's privately owned land."  WVCA's "trespass" allegations appear to be based on an excerpt from the website of a group known as "ACORN" indicating that ACORN members "broke away from the larger march to intentionally trespass onto the petition area."  WVCA Amicus Brief, at 7-8 n.7.   ACORN, however, is not a Plaintiff in this action.

There is otherwise no factual support for the Coal Association's allegation that any of the prior visits made by Plaintiffs' members to Blair Mountain Battlefield involved any trespassing on any Coal Association member's property.  Rather, prior visits by Plaintiffs' members to Blair Mountain Battlefield were made based on the permission of landowners or by using public access roads and waterways located within the nomination area that provide public access to the throughout the site..  http://marchonblairmountain.org/?page_id=406  (noting that the march on Blair Mountain will take place on "two-lane rural roads").

Numerous cases recognize that plaintiffs have standing based on injury to "aesthetic concerns" resulting from threatened harm to historic resources on privately owned land.  *See, e.g.,  Pye v. US Army Corps of Engineers*, 269 F.3d 459 (D.C. 2001) (Plaintiffs had suffered injury to their "aesthetic concerns pertaining to the integrity and cohesiveness of the historic \district and individual sites located on privately-owned adjacent lands).  *Sierra Club v. U.S. Army Corps of Engineers*, __ F.3d __, 2011 WL  2718144  * 7 (8th Cir. July 14, 2011) (Plaintiffs suffered injury to their "aesthetic interests" by virtue of destruction of natural resources on private  property and that was not open to public use) .  As Plaintiffs have previously demonstrated, without National Register listing, mining companies will secure permits to

undertake mining permits, including mountaintop removal mining activities that will destroy the topography of Blair Mountain, creating a scar on the landscape that is visible for miles, and cause dust, blasting fumes, flyrock, flooding, and pollution to waterways that extends beyond the WVCA's members property, causing injury to Plaintiffs' use, enjoyment, and appreciation of the site. *See* Hendrix Supp. Decl. (Pl. SJ Opp. Exh. 1), Attachment A, Exhibit I (Mountaintop Mining/Valley Fill Draft PEIS (Pacer Document # 30-2).

The Coal Association's "mootness" argument is so lacking in legal support that the NPS did not even advance this baseless legal theory. The Coal Association fails even to cite the relevant standard for determining mootness, which focuses on whether "(1) it can be said with assurance that 'there is no reasonable expectation . . .that the alleged violation will recur' . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625 (1979). The Coal Association, as "the party asserting mootness," bears the "'heavy burden' of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 189 (2000).

The Coal Association's submission falls far short of meeting its heavy burden to demonstrate that subsequent events have eradicated the effects of the NPS's unlawful action in removing Blair Mountain from the National Register. The re-nomination of Blair Mountain Battlefield to the National Register, which was apparently initiated by West Virginia State Historic Preservation Office ("WV SHPO"), [2] will not cure or eradicate the harm from the NPS's

---

[2]  Contrary to the Coal Association's suggestion (WV Mot. at 4), the Plaintiffs have had no involvement whatsoever in the recent effort of the WV SHPO to re-nominate the Blair Mountain Battlefield to the National Register.

wrongful action in de-listing Blair Mountain Battlefield.  To the contrary, as the Coal

Association's attachments make clear, this re-nomination is once again based on selective

changes to the calculation of owner objections transmitted by mining companies designed to

reduce the list of owners and inflate the weight of objectors.  For example, while the Coal

Association asserts that a majority of landowners objected to the re-nomination, its *amicus* brief

makes clear that this calculation was again based on one-sided information tendered by mining

companies (represented by Jackson Kelly, the same law firm that represents the Coal

Association), such as through the transmission of "death certificates" to remove names from the

list, without identifying the individuals who may have assumed ownership of those properties

after the death of the prior owner.  The Coal Association also bases this assertion on the

purported submission of additional objections by Jackson Kelly.  However, the Coal Association

does not even provide copies of any of this material to the Court.

        Accordingly, the Coal Association's brief makes clear that the re-nomination effort will

likely repeat and perpetuate the harmful effects of the NPS's wrongful action, since mining

interests have again attempted to alter and manipulate the calculation of owners and objections

through the submission of one-sided, selective, and unsupported changes to the list of owners

and objections, resulting in a determination that a majority of owners object to the National

Register-listing.  Any new nomination of Blair Mountain to the National Register will continue

to suffer from the same prejudicial errors as the Keeper's de-listing action challenged herein, and

will not eradicate the effects of the NPS's unlawful action in removing Blair Mountain

Battlefield from the National Register.  Moreover, as Plaintiffs have demonstrated in their

summary judgment motion, Blair Mountain was properly listed in the National Register on

March 30, 2009.  The WV SHPO's authority to initiate a "do over" of the same nomination that

has already been accepted by the Keeper is questionable.  *See* 36 C.F.R. § 60.6(w).

In sum, the Coal Association's arguments are lacking in legal and factual support and will not be helpful to this Court.  Granting this motion will unnecessarily expend judicial resources in addressing baseless jurisdictional arguments, and will needlessly delay the resolution of this case while imposing on the Plaintiffs the burden of responding to them.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Coal Association's motion for leave to file an *amicus* brief be denied.

Respectfully submitted,

_____/s/_____
/s/ Andrea C. Ferster (DC Bar # 384648)
Attorney at Law
2121 Ward Court, N.W. 5th Fl.
Washington, D.C.  20037
(202) 974-5142
(202) 223-9257 (Facsimile)
aferster@railstotrails.org


Counsel for Plaintiffs

Aaron Isherwood
(admitted *pro hac vice*)
Sierra Club Environmental Law Program
85 Second Street, 2d Floor
San Francisco, CA 94105
(415) 977-5680
(415) 977-5793 (fax)
aaron.isherwood@sierraclub.org

Counsel for Plaintiff Sierra Club

Elizabeth S. Merritt, Esquire (DC Bar #337261)
Deputy General Counsel
Paul W. Edmondson, Esquire (DC Bar # 358440)
Vice President & General Counsel
National Trust for Historic Preservation
1785 Massachusetts Avenue NW
Washington, D.C. 20036
(202) 588-6035
(202) 588-6272 (fax)
betsy_merritt@nthp.org

Counsel for Plaintiff National Trust for Historic Preservation


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this 11th day of August, 2011, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to the West Virginia Coal Association's Motion for Leave to File a Brief as *Amicus* Curiae in Support of Defendant's Brief in Opposition to Summary Judgment and Cross Motion for Summary Judgment to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel who have registered for receipt of documents filed in this manner.


_____/s/_____

Andrea C. Ferster